IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK MANN,

     Plaintiff,

v.                                                    CASE NO. 1:17-cv-241-AW-GRJ

DR. C CALDERON, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate in the custody of the Florida Department of
Corrections ("DOC"), initiated this case by filing a *pro se* complaint pursuant
to 42 U.S.C. § 1983.  ECF No. 1.  Plaintiff is now represented by counsel,
and is proceeding pursuant to a Third Amended Complaint, ECF No. 88.
Plaintiff alleges that Defendants violated his Eighth Amendment rights in
connection with Plaintiff's medical care as a DOC inmate.  *See* ECF No. 88.

Now pending before the Court is the motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6) filed by Defendants Centurion of Florida LLC
("Centurion"), C. Calderon, and M. Remirez. ECF No. 99.  As grounds for
dismissal, Defendants contend that: (1) Plaintiff failed to exhaust
administrative remedies prior to filing suit; (2) the Third Amended Complaint
fails to state a claim upon which relief may be granted; and (3) Plaintiff's

claims are barred by the doctrine of qualified immunity.  ECF No. 99.

Plaintiff has filed a response in opposition to the motion to dismiss.  ECF No.

103.  For the reasons discussed below, the undersigned recommends that

Defendants' motion to dismiss be denied.

## I. <u>STANDARD OF REVIEW</u>

Determining whether a complaint should be dismissed under Rule

12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim

upon which relief may be granted turns on whether the plaintiff has alleged

sufficient plausible facts to support his claims. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007). As the Supreme Court held in *Twombly*, "[f]actual

allegations must be enough to raise a right to relief above the speculative

level," and the complaint "must contain something more . . . than . . . a

statement of facts that merely creates a suspicion [of] a legally cognizable

right of action." *Id.* at 555.

*Twombly* "expounded the pleading standard for all civil actions," and

conclusory allegations that "amount to nothing more than a formulaic

recitation of the elements of a constitutional . . . claim" are "not entitled to be

assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To

escape dismissal, the complaint must allege facts sufficient to move claims

"across the line from conceivable to plausible." *Id.* "The plausibility standard

is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## II.  PLAINTIFF'S ALLEGATIONS

The allegations of the Third Amended Complaint may be summarized as follows.  In May 2014, Plaintiff was confined at Holmes Correctional Institution.  Plaintiff declared a medical emergency after seeing blood in his stool, and he was admitted to the infirmary by Dr. Perez-Perez.  Plaintiff remained in the infirmary for about a week and a half.  Dr. Perez-Perez told Plaintiff that she was submitting a request for a colonoscopy but did not know whether the request would be approved.  Plaintiff alleges that his serious medical condition was ignored by the medical staff and he was returned to the general population without receiving a colonoscopy.  ECF No. 88 at 5-6.

In July 2014, Plaintiff was transferred from Holmes CI to Tomoka CI.  Plaintiff continued to experience bloody stools and gastrointestinal pain.  In early January 2015, he put in for sick call.  Blood was taken and an x-ray was performed, but Plaintiff received no treatment and was provided no

information about his condition.  Plaintiff alleges that he was examined by
defendant Dr. Calderon and defendant Remirez, a physician's assistant, but
neither made any effort to treat Plaintiff's serious medical condition.  Plaintiff
alleges that Remirez said his pain was caused by his appendix and
gastroesophageal reflux disease (GERD).  Defendants did not order a
colonoscopy.  When Plaintiff inquired about a colonoscopy, no answer was
provided.  *Id.* at 6-7.

From March 19, 2015, to May 22, 2016, Plaintiff repeatedly requested
care for his condition but he was given no medical attention despite the fact
that his rectal bleeding and severe GI pain were worsening.  *Id.* at 7.

From May 14, 2014, through February 1, 2016, Defendant Corizon
Health, Inc. ("Corizon") was the entity responsible for providing medical care
for Florida DOC inmates.  Defendant Centurion replaced Corizon around
February 1, 2016, but the medical staff remained the same.  *Id.* at 7-8.

In April 2016, Plaintiff began to experience rapid weight loss in addition
to the rectal bleeding and GI pain.  By May 22, 2016, his pain had become
unbearable and he was unable to eat.  Plaintiff alleges that he still received
no specific medical care for his condition.  Over the next two weeks, Plaintiff
suffered a collapsed lung, pneumonia, and his weight loss reached 40
pounds.  Plaintiff again declared a medical emergency but was told that his

problems were caused by GERD.  In mid-June 2016, Plaintiff began to

experience uncontrollable shaking.  On June 23, 2016, he was admitted to

the infirmary for 24 hours and then released, although he still shook

uncontrollably at night.  Plaintiff presented at medical for a follow-up on June

28, and the shaking was so bad that the nurse could not take his vital signs.

During this visit, physician's assistant Remirez arranged for Plaintiff to be

transferred to Halifax Health Medical Center, telling him "now you can get

that appendix taken care of."  Plaintiff alleges that he was "quickly"

diagnosed with stage IV colon cancer at Halifax.  *Id.* at 8-10.  Following his

release from Halifax, Plaintiff was sent to Lake Butler Reception and Medical

Center for chemotherapy.  *Id.* at 10.  He thereafter initiated the administrative

remedy process.  *Id.* at 11-12.

Plaintiff alleges that the DOC medical staff intentionally misdiagnosed

his serious medical condition from May 2014 through June 2016 "in order to

justify their refusal to spend the additional funds needed to send him to an

outside medical center for a colonoscopy".  He contends that Defendants'

actions were "consistent with Corizon's long-standing policy of maximizing

profits on their contract to provide medical care to inmates, instead of

providing necessary medical care."  He alleges that Defendants' deliberate

indifference to his serious medical condition allowed his colon cancer to go untreated for 26 months. *Id.* at 9-10.

In Count I of the Complaint, Plaintiff alleges that Corizon Health, Inc. had a duty and ethical responsibility to implement policies and procedures to ensure that inmates are seen by the appropriate medical specialists and receive appropriate medical treatment. He contends that Corizon was deliberately indifferent to his need for colon cancer treatment by specifically engaging in policies and procedures intended to protect Corizon's financial interests over the medical needs of inmates. He contends that Corizon's deliberate indifference is demonstrated by its refusal to schedule him for a colonoscopy after Dr. Perez-Perez submitted her request, and that Corizon continued to refuse the request until May 2016 when Corizon lost its contract with the DOC. Plaintiff alleges that Corizon denied the colonoscopy "in spite of the obvious, serious, medical need, gastrointestinal pain and bloody bowel movements." Plaintiff alleges that "this failure to take recommended medical action in order to save money violated [Plaintiff's] rights under the Eighth and Fourteenth Amendments" and prevented him from receiving the care needed to prevent his cancer from progressing to stage IV. *Id.* at 13-14.

In Count II, Plaintiff makes the same deliberate-indifference claims against Centurion. Plaintiff alleges that Centurion engaged in policies and

procedures intended to protect its financial interests, in conflict with the medical needs of inmates.  Plaintiff alleges that Centurion's deliberate indifference is demonstrated by its failure to ensure that Plaintiff received a colonoscopy between May 2016 and the end of June 2016, after Centurion was contracted to provide medical services to DOC inmates.  Plaintiff contends that had Centurion not acted with deliberate indifference, Plaintiff could have received treatment before his cancer advanced to stage IV.  *Id.* at 15-16.

In Count III, Plaintiff alleges that from May 2014 through the end of July 2014, Dr. Perez-Perez exercised deliberate indifference by failing to provide necessary medical care in a timely manner.  Plaintiff alleges that Dr. Perez-Perez acted pursuant to Corizon's policy of denying medical care for economic reasons in order to maximize profits under the DOC contract.  *Id.* at 16-17.

Plaintiff alleges in Count IV that physician's assistant Remirez, from July 25, 2014, through June 28, 2016, exercised deliberate indifference to Plaintiff's serious medical needs, pursuant to the policy to deny medical care for economic reasons.  *Id.* at 18-19.

In Count V, Plaintiff alleges that Dr. Calderon from July 25, 2014, through June 28, 2016, exercised deliberate indifference to Plaintiff's serious

medical needs, pursuant to the policy to deny medical care for economic reasons. *Id.* at 19-20.

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.* at 20-21.

### III. <u>DISCUSSION</u>

#### A. *Exhaustion of Administrative Remedies*

As the first ground for dismissal, Defendants contend that Plaintiff failed to properly exhaust his administrative remedies before filing this case. ECF No. 99 at 5-7.

Under § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a); *see also Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted. *Jones v. Bock*, 549 U.S. 199, 211 (2002). The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005). "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating[.] [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024–25 (7th Cir. 2002)).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich*, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008.) Accordingly, "[a] district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." *Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009).

Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step analysis as established in *Turner v. Burnside*,

541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082; *Whatley v. Warden*, 802 F.3d 1205, 1211–12 (11th Cir. 2015) (at first *Turner* step, district court must accept plaintiff's facts as true "and make the exhaustion determination on [plaintiff's] view of facts"). If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear error).

In Florida, the procedural rules an inmate must follow in order to properly exhaust administrative remedies are promulgated by the Florida Department of Corrections and contained the Florida Administrative Code. See Fla. Admin. Code Chapter 33-103 ("Inmate Grievances").

To properly grieve an issue, an inmate must file a written informal grievance using Form DC6-236, (Rule 33–103.005). If the inmate is

dissatisfied with the result of the informal grievance, he must next file a written formal grievance with the Warden's office using Form DC1-303, (Rule 33–103.006). Finally, if the inmate feels that the grievance has still not been satisfactorily resolved, he must submit a written appeal to the State Office of the Secretary ("Central Office") using Form DC1-303. (Rule 33–103.007). *See e.g. Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). (Rules 33-103.005, 33-103.006, and 33-103.007).

The rules also establish strict time frames for inmates to file grievances. Pursuant to Rule 33-103.011 ("Time Frames for Inmate Grievances"), informal grievances must be received "within 20 days of the when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. (Rule 33-103.011(1)(a), and (b)). Direct grievances to the Central Office must also be received within 15 days from the date on which the incident or action being grieved occurred. (*See* Rule 33-103.011(1)(d)).

Grievance appeals to the Office of the Secretary "[m]ust be received within 15 calendar days from the date the response to the formal grievance

is returned to the inmate." Rule 33-103.011(1)(c). To eliminate issues with mailing, the rules make provisions for appeals to the Secretary to be receipted locally at the institution/facility. *See* Rule 33-103.006(8).

Defendants rely on the following evidence in support of their motion to dismiss. On November 30, 2016, Plaintiff filed a formal grievance at the institutional level. ECF No. 99-1 at 1-2. The grievance was responded to by RMC-Lake Butler Medical Director A. Ladele and signed by the Warden on December 19, 2016. *Id.* at 3. Plaintiff then submitted an appeal to the FDOC Secretary. *Id.* at 4. Plaintiff's appeal is dated January 5, 2017, and is stamped "received" by the Inmate Grievance Appeals office on January 9, 2017. *Id.* On June 28, 2017, Plaintiff's appeal was "returned without action" with the explanation that it was not "received in the Office of the Secretary within 15 calendar days of the institutional response." *Id.* at 5. Defendants contend that because Plaintiff's appeal was filed more than 15 days after the December 19, 2016, grievance denial and was rejected by the FDOC as untimely, Plaintiff failed to exhaust his administrative remedies as required by the PLRA and therefore his claims cannot proceed in this Court. *See* ECF. No. 99 at 6-7.

In opposition to the motion, Plaintiff relies on the allegations in his Third Amended Verified Complaint. Plaintiff contends that the denial of his

institutional-level grievance was not received by him until January 4, 2017, 16 days after it was denied. Plaintiff argues that his appeal to the Secretary, which was filed the next day, is therefore timely. ECF No. 88 at 11-12.

At the first step of the *Turner* analysis, the Court must accept Plaintiff's assertion as true and make the exhaustion determination on Plaintiff's view of the facts. *Whatley*, 802 F.3d at 1211–12). Further, regarding grievance appeals, the Eleventh Circuit has explained that to exhaust his administrative remedies, a plaintiff is "required to appeal the denial of his formal grievance within fifteen days of the date he *received notice that the formal grievance was denied*." *Jackson v. Griffin*, 762 F. App'x 744, 745 (11th Cir. 2019) (emphasis added) (citing Fla. Admin. Code § 33-103.011(1)(c) (providing that such appeals "must be received within 15 calendar days from the date the response to the formal grievance is returned to the inmate")).

Here, Plaintiff avers that he did not receive notice that his formal grievance was denied until January 4, 2016, and he immediately thereafter submitted an appeal. ECF No. 88 at 11. Accepting this assertion as true, as the Court must, Defendants are not entitled to have the Complaint dismissed for failure to exhaust at the first step of the *Turner* analysis.

The Court further finds that Defendants have failed to meet their burden under the second step of the *Turner* analysis. *See Whatley*, 802 F.3d

at 1209. Other than the appeal form that Plaintiff submitted on January 5, 2017, and the FDOC's rejection of the appeal as untimely six months later, Defendants have provided no evidence to contradict Plaintiff's sworn assertion that he timely submitted his appeal within 15 days of receiving notice of the denial of his formal grievance. Accordingly, in light of the evidence available to the Court, Defendants' motion to dismiss for failure to exhaust administrative remedies is due to be denied.

## B. Failure to State a Claim

Defendants next contend that Plaintiff has failed to state a deliberate-indifference claim against Centurion. Defendants argue that Plaintiff's claims are based on a theory of *respondeat superior*, which is not cognizable under § 1983. Defendants contend that Plaintiff's allegations reflect that he received "substantial and appropriate medical treatment for his cancer" during the time that Centurion provided healthcare services at Tomoka CI. Defendants state that although Centurion replaced Corizon as the DOC healthcare provider on February 1, 2016, it did not start providing healthcare services at Tomoka CI until May 16, 2016. ECF No. 99 at 2.

The Constitution forbids prison officials from consciously ignoring the serious medical needs of prison inmates. Such "deliberate indifference" to an inmate's serious medical need by a state actor is cruel and unusual

punishment in violation of the Eighth and Fourteenth Amendments. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976). To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (the prisoner must demonstrate that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). As the Eleventh Circuit has explained:

> A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness. In *Estelle,* the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death' " or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle,* 429 U.S. at 103, 97 S.Ct. 285 (quoting *In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 34 L. Ed. 519 (1890)).

*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999)

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

With respect to Centurion, in order to state a claim for relief against a corporate entity acting under color of state law, a plaintiff must allege that: 1) his constitutional rights were violated; 2) the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) the

policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Wheeler v. Crews*, 2015 WL 7731396, *4 (N.D. Fla. Oct. 26, 2015) (*citing McDowell*, 392 F.3d at 1289).

The allegations of the Third Amended Complaint reflect that by May 22, 2016 – after Centurion became the DOC healthcare provider – Plaintiff was experiencing "unbearable" pain for which he received "no specific medical care".  Over the next two weeks, Plaintiff suffered a collapsed lung, pneumonia, and severe weight loss, which he says medical staff attributed to GERD.  It wasn't until late June 2016 when Plaintiff was experiencing uncontrollable shaking that he was transferred to a hospital where his cancer was diagnosed.  ECF No. 88 at 8-10.  Plaintiff alleges that Tomoka CI medical staff deliberately delayed referring him for a colonoscopy due to Centurion's policies and procedures which are designed to protect its financial interests, in conflict with the medical needs of inmates.  Plaintiff contends that had Centurion not acted with deliberate indifference, Plaintiff could have received treatment before his cancer advanced to stage IV.  *Id.* at 15-16.  Accepting these allegations as true, the Court finds that Plaintiff's allegations are sufficient to state a deliberate-indifference claim against Centurion based on its alleged policy of denying or delaying necessary medical care in order to cut costs.  *See McDowell*, 392 F.3d 1283.

With respect to Dr. Calderon and physician's assistant Remirez, Defendants contend that Plaintiff has failed to allege the subjective component of a deliberate-indifference claim. Defendants contend that Plaintiff's allegations show that he received care and diagnostic tests, although Plaintiff was incorrectly diagnosed with a "bad appendix" and GERD. Defendants argue that when Remirez realized Plaintiff needed to be hospitalized, he immediately transferred him. Defendants also argue that Calderon and Remirez provided care pursuant to the Centurion contract for only a brief period of time from May 16, 2016, to the end of June 2016. ECF No. 99 at 11-12.

Plaintiff's allegations reflect that Calderon and Remirez were the medical providers from the time that Plaintiff was transferred to Tomoka CI in July 2014. Although they provided some diagnostic procedures, Plaintiff alleges that Defendants never referred him for a colonoscopy despite his objectively serious and persistent symptoms of bloody stools and gastrointestinal pain. Plaintiff alleges that Defendants did not treat his worsening symptoms until his condition became very severe in May and June 2016. ECF No. 88 at 6-7.

"Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of

serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott*, 182 F.3d at 1255 (11th Cir.1999) (citing *Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir.1994); *Brown v. Hughes,* 894 F.2d 1533, 1537–39 (11th Cir.1990)). "We have also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *Id.* (citing *Steele v. Shah,* 87 F.3d 1266, 1269–70 (11th Cir.1996); *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir.1989)). Moreover, "'[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Id.* (quoting *Mandel v. Doe,* 888 F.2d 783, 789 (11th Cir. 1989)); *see also Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir.1985).

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged a deliberate-indifference claim against Calderon and Remirez.

## C. *Qualified Immunity*

Defendants contend that they are entitled to qualified immunity from Plaintiff's deliberate-indifference claims because he does not allege a violation of clearly-established law. ECF No. 99 at 13-14.

Under the doctrine of qualified immunity, a government official sued for damages for injuries arising out of the performance of discretionary functions must be "shown to have violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Conn v. Gabbert,* 526 U.S. 286,119 S.Ct. 1292, 1295 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). As the Supreme Court has explained, "qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier,* 520 U.S. 259, 270 (1997) (citations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

It is apparent that the Eighth Amendment deliberate-indifference doctrine discussed above was clearly established at the time of the events giving rise to Plaintiff's claims. Therefore, the Court cannot conclude that Defendants are entitled to qualified immunity from Plaintiff's deliberate-indifference claims. *See McElligott*, 182 F.3d at 1260 (in context of medical care deliberate-indifference claim, "we find the Eighth Amendment doctrine governing the outcome of this case to have been clearly established at the time of the events in question").

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. 99, should be **DENIED**.

**IN CHAMBERS** this 9th day of October 2020.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any**

**particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.