IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MARK MANN,

     Plaintiff,

v.                             CASE NO. 1:17-cv-241-AW-GRJ

DR. C CALDERON, et al.,

     Defendants.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

Plaintiff, an inmate in the custody of the Florida Department of
Corrections ("DOC"), initiated this case by filing a *pro se* complaint pursuant
to 42 U.S.C. § 1983. ECF No. 1. Plaintiff is now represented by counsel,
and is proceeding pursuant to a Third Amended Complaint, ECF No. 88
("Complaint"). The Complaint stems from alleged violations of Plaintiff's
Eighth Amendment rights in connection with his medical care as a DOC
inmate. *See* ECF No. 88. Plaintiff's Complaint named as Defendants
Centurion of Florida, LLC ("Centurion"), Corizon Health, Inc. ("Corizon"), Dr.
E. Perez-Perez, Dr. C. Calderon, and M. Remirez, PA. All claims against
Centurion have been dismissed by stipulation, as have all claims against Dr.
Calderon and M. Remirez arising on and after May 15, 2016, when

Centurion became the healthcare contractor at Tomoka CI where Plaintiff was incarcerated.  ECF No. 133.

Now pending before the Court is the motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Corizon, Dr. Perez, Dr. Calderon, and M. Remirez ("Corizon Defendants"). ECF No. 130.  Plaintiff has filed a response in opposition to the motion, ECF No. 136, and therefore the motion is ripe.  In his response, Plaintiff states that he is abandoning any remaining claims against M. Remirez.  ECF No. 136 at 14.

Defendants have also filed a motion to strike the report of Plaintiff's expert, Dr. Heath D. Beckham, because it was disclosed beyond the deadline for disclosure of experts set forth in the Court's amended scheduling order.  ECF No. 126.  Plaintiff opposes the motion, arguing that Defendants have not been prejudiced by his untimely disclosure.  ECF No. 127.  For the reasons discussed below, the undersigned finds that the motion to strike is due to be denied.  It is respectfully recommended that Defendants' motion for summary judgment be granted in part with respect to defendants Corizon, Dr. Perez, and M. Remirez, and denied with respect to Plaintiff's claims against Dr. Calderon, arising prior to May 15, 2016.

# I. <u>MOTION TO STRIKE</u>

The Court's Second Amended Scheduling Order for Discovery, Mediation and Trial, ECF No. 113, was entered on July 22, 2020, and provided that Plaintiff's deadline to disclose experts was September 1, 2020. Defendants' deadline was October 1, 2020. Discovery closed on November 2, 2020. On September 11, 2020, Plaintiff served his Rule 26(A)(2) disclosure of Heath D. Beckham, M.D., but did not serve a report by Dr. Beckham. *See* ECF No. 126, Exhibit "A." On October 1, 2020, the Corizon Defendants served their Rule 26(a)(2) expert disclosure report of Dr. Arthur Fournier. On October 15, 2020, forty-four days after the disclosure deadline, Plaintiff served Dr. Beckham's report. *See id.* Exhibit "B." The Corizon Defendants argue that Plaintiff's expert disclosure should be stricken because it is out of time and filed without court authorization. ECF No. 126.

Plaintiff acknowledges that his disclosure was untimely and that he should have sought an extension of the disclosure deadline or leave to file the untimely disclosure. ECF No. 127. Plaintiff represents that he was unable to retain an expert until September 11, 2020. Medical records were provided to Dr. Beckham at that time, and he produced his report on October 15, 2020, which was then served on Defendants. *Id.* Plaintiff argues that Defendants made no effort to depose Dr. Beckham within the discovery

deadline, and that any prejudice stemming from the untimely disclosure could have been addressed and cured in a deposition.  Plaintiff further argues that Defendants are not prejudiced by the untimely disclosure because this case did not have a definitive trial date.  *Id.*[1]

Pursuant to Fed. R. Civ. P. 26(a)(2)(D), a party is required to disclose its expert opinion reports "at the times and in the sequence that the court orders."  If a party fails to provide timely disclosures, the Court, pursuant to Fed.R.Civ.P. 37(c)(1), may impose "appropriate sanctions," including prohibiting the offending party from using the evidence. In determining whether to sanction a party and exclude the party's expert witness evidence, courts have looked to the following four factors as instructive: (1) prejudice to the opposing party; (2) ability of that party to cure the prejudice; (3) the extent to which the expert testimony would disrupt or delay the orderly and efficient progression of the case; and (4) bad faith or willfulness in failing to comply with the court's order.  *NAACP v. Florida Dept. of Corrections*  2002 WL 34708021, *1 (M.D. Fla. 2002) (unpublished) (citing  *MacDonald v. United States*, 767 F.Supp. 1295, 1298 (M.D. Pa.1991); *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201 (3rd Cir. 1978)).

---

[1] The Court removed this case from the February trial docket in view of the pending summary judgment motion.  ECF No. 140.

In this case, the Court concludes that Dr. Beckham's report should not be excluded.  Exclusion is a drastic sanction, and, as discussed below, the Court is persuaded that Dr. Beckham's opinion is central to Plaintiff's claims. The record does not reflect that Plaintiff's untimely disclosure was due to bad faith or willfulness.  Moreover, any prejudice to Defendant in this case is lessened by the fact that this case is presently not set for trial.  The Court will consider requests for a brief reopening of the discovery period to complete expert depositions, if necessary.  Accordingly, Defendants' motion to strike will be denied.

## II. <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

### III. <u>PLAINTIFF'S ALLEGATIONS</u>

The allegations of the Third Amended Complaint that are pertinent to Defendants' motion may be summarized as follows.  In May 2014, Plaintiff was confined at Holmes CI.  Plaintiff declared a medical emergency after seeing blood in his stool, and he was admitted to the infirmary.  Plaintiff alleges that Dr. Perez told him she was submitting a request for a colonoscopy but did not know whether the request would be approved.  Plaintiff alleges that his serious medical condition was ignored by the medical staff and he was returned to the general population without receiving a colonoscopy.  ECF No. 88 at 5-6.

In July 2014, Plaintiff was transferred from Holmes CI to Tomoka CI.

Plaintiff continued to experience bloody stools and gastrointestinal pain.  In

January 2015, he put in for sick call.  Blood was taken and an x-ray was

performed, but Plaintiff alleges he received no other treatment and was

provided no information about his condition.  Plaintiff alleges that he was

examined by defendant Dr. Calderon and PA Remirez, but neither made any

effort to treat Plaintiff's condition.  Defendants did not order a colonoscopy.

When Plaintiff inquired about a colonoscopy, no answer was provided.  *Id.* at

6-7.

Plaintiff alleges that from March 19, 2015, to May 22, 2016, he sought

care for his condition, but he was given no medical attention despite the fact

that his rectal bleeding and severe GI pain were worsening.  *Id.* at 7.  In April

2016, Plaintiff experienced rapid weight loss in addition to rectal bleeding

and GI pain.  By May 22, 2016, his pain had become unbearable and he was

unable to eat.  Plaintiff alleges that he still received no specific medical care

for his condition.  Over the next two weeks, Plaintiff suffered a collapsed

lung, pneumonia, and his weight loss reached 40 pounds.  Plaintiff again

declared a medical emergency but was told that his problems were caused

by GERD.  In mid-June 2016, Plaintiff began to experience uncontrollable

shaking.  On June 23, 2016, he was admitted to the infirmary for 24 hours

and then released, although he still shook uncontrollably at night.  Plaintiff

presented at medical for a follow-up on June 28, and the shaking was so bad

that the nurse could not take his vital signs.   Plaintiff was transferred to

Halifax Health Medical Center, where he was diagnosed with stage IV colon

cancer.  *Id.* at 8-10.  Following his release from Halifax, Plaintiff was sent to

Lake Butler Reception and Medical Center for chemotherapy.  *Id.* at 10.

Plaintiff alleges that the DOC medical staff intentionally misdiagnosed

his condition from May 2014 through June 2016 "in order to justify their

refusal to spend the additional funds needed to send him to an outside

medical center for a colonoscopy".  He contends that Defendants' actions

were "consistent with Corizon's long-standing policy of maximizing profits on

their contract to provide medical care to inmates, instead of providing

necessary medical care."  He alleges that Defendants' deliberate

indifference to his serious medical condition allowed his colon cancer to go

untreated for 26 months.  *Id.* at 9-10.

In Count I of the Complaint, Plaintiff alleges that Corizon Health, Inc.

had a duty and ethical responsibility to implement policies and procedures to

ensure that inmates are seen by the appropriate medical specialists and

receive appropriate medical treatment.  He contends that Corizon was

deliberately indifferent to his need for colon cancer treatment by specifically

engaging in policies and procedures intended to protect Corizon's financial interests over the medical needs of inmates. He contends that Corizon's deliberate indifference is demonstrated by its refusal to schedule him for a colonoscopy after Dr. Perez submitted her request, and that Corizon continued to refuse the request until May 2016 when Corizon lost its contract with the DOC. Plaintiff alleges that Corizon denied the colonoscopy "in spite of the obvious, serious, medical need, gastrointestinal pain and bloody bowel movements." Plaintiff alleges that "this failure to take recommended medical action in order to save money violated [Plaintiff's] rights under the Eighth and Fourteenth Amendments" and prevented him from receiving the care needed to prevent his cancer from progressing to stage IV. *Id.* at 13-14.

In Count III, Plaintiff alleges that from May 2014 through the end of July 2014, Dr. Perez exercised deliberate indifference by failing to provide necessary medical care in a timely manner. Plaintiff alleges that Dr. Perez acted pursuant to Corizon's policy of denying medical care for economic reasons in order to maximize profits under the DOC contract. *Id.* at 16-17.

In Count V, Plaintiff alleges that Dr. Calderon was deliberately indifferent to Plaintiff's serious medical needs, pursuant to the policy to deny medical care for economic reasons. *Id.* at 19-20.

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.* at 20-21.

## IV. DISCUSSION

The Constitution forbids prison officials from consciously ignoring the serious medical needs of prison inmates. Such "deliberate indifference" to an inmate's serious medical need by a state actor is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976). A deliberate-indifference claim has both an objective component and a subjective component. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). For the objective component, the plaintiff must show that he has an objectively "serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks omitted).

To show that the prison official was deliberately indifferent, the plaintiff must prove that: (1) the prison official had a subjective knowledge of a risk of serious harm; (2) the prison official disregarded that risk; and (3) did so by conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th

Cir. 2000) (the prisoner must demonstrate that the officials' response was

so inadequate as to "constitute an unnecessary and wanton infliction of

pain," and was not "merely accidental inadequacy, negligence in diagnosis

or treatment, or even medical malpractice actionable under state law.").

As the Eleventh Circuit has explained:

A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness. In *Estelle,* the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death' " or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." *Estelle,* [429 U.S. at 103](quoting *In re Kemmler,* 136 U.S. 436, 447 (1890)).

*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999).

The Eleventh Circuit has recently acknowledged "a tension within our

precedent regarding the minimum standard for culpability under the

deliberate-indifference standard." *Patel v. Lanier Cty. Ga.*,  969 F.3d 1173,

1188-89 & n.10 (11ᵗʰ Cir. 2020). In *Patel,* the Court explained:

Although we have repeatedly noted that 'a claim of deliberate indifference requires proof of more than *gross* negligence,' *e.g.*, *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (emphasis added), another line of our cases favors the phrase 'more than *mere* negligence,' [*McElligot*, 182 F.3d at 1255] (emphasis added). A panel of this Court recently suggested that 'the 'more than

mere negligence' standard in *McElligott* is more consistent with *Farmer* [*v. Brennan*, 511 U.S. 825 (1994),] than the 'more than gross negligence' standard in *Townsend*.' *Melton v. Abston*, 841 F.3d 1207, 1223 n.2 (11th Cir. 2016). These competing articulations—'gross' vs. 'mere' negligence—may well represent a distinction without a difference because . . . the Supreme Court itself has likened the deliberate-indifference standard to 'subjective *recklessness* as used in the criminal law.' *Farmer*, [511 U.S. at 839–40] (emphasis added). Accordingly, no matter how serious the negligence, conduct that can't fairly be characterized as *reckless* won't meet the Supreme Court's standard.

*Patel,* 969 F.3d 1173 n.10.

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'")); *Jackson v. Fair*, 846 F.2d 811,

817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

"Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott*, 182 F.3d at 1255 (11th Cir.1999) (citing *Harris v. Coweta County,* 21 F.3d 388, 393–94 (11th Cir.1994); *Brown v. Hughes,* 894 F.2d 1533, 1537–39 (11th Cir.1990)). "We have also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *Id.* (citing *Steele v. Shah,* 87 F.3d 1266, 1269–70 (11th Cir.1996); *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir.1989)). Moreover, "'[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.'" *Id.* (quoting *Mandel v. Doe,* 888 F.2d 783, 789 (11th Cir. 1989)); *see also Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir.1985).

With respect to Corizon, in order to establish liability under § 1983

against a corporate entity acting under color of state law, a plaintiff must show that: 1) his constitutional rights were violated; 2) the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Wheeler v. Crews*, 2015 WL 7731396, *4 (N.D. Fla. Oct. 26, 2015) (*citing McDowell*, 392 F.3d at 1289).  "A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

## A.  *Corizon's Liability Based on Custom or Policy*

Plaintiff's "custom or policy" claims against Corizon require only brief

discussion.  The Complaint conclusionally alleges that the asserted deficiencies in Plaintiff's medical care stemmed from a custom or policy of denying diagnostic procedures such as colonoscopies in order to cut costs. ECF No. 88.  In support of summary judgment, Defendants contend there is no evidence in the record that either Dr. Perez or Dr. Calderon made treatment decisions based on such a policy or custom by Corizon.  *See* ECF No. 130 at 18-19.  Defendants are correct.  Plaintiff argues that a motive to save Corizon money "is one possible inference" that could be drawn from Dr. Calderon's diagnostic and treatment decisions.  ECF No. 136 at 14.  The Court cannot draw such an "inference" when the record is devoid of any evidence that the alleged custom or policy exists.  Therefore, Corizon is entitled to summary judgment on Plaintiff's claim of liability stemming from a custom or policy of denying colonoscopies in order to save money.

## B.  *Deliberate Indifference Claim Against Dr. Perez*

Defendants' summary judgment evidence regarding Dr. Perez's liability may be summarized briefly.  On May 14, 2014, a nurse at Holmes CI completed an Abdominal Pain Protocol, after Plaintiff complained of pain and bloody stool.  Dr. Perez was notified and she admitted Plaintiff to the infirmary.  Dr. Perez ordered an x-ray, an IV, blood work, and medications. X-ray results showed no obstructions. On May 16, 2014, Dr. Perez released

Plaintiff from the infirmary as there was no longer blood in his stool. On May 21, 2014, Plaintiff reported no additional bleeding and that he was "doing good." Fecal occult blood cards, used to determine if blood is in stool, were provided to Plaintiff and the treatment plan was to continue medications. On May 23, 2014, the cards were returned with negative results. Dr. Perez diagnosed internal hemorrhoids and continued medications.  Dr. Perez never saw Plaintiff again, but according to her declaration in her medical judgment Plaintiff did not require additional treatment or referral to a specialist. Dr. Perez states that if she thought that appropriate, she would have entered orders to that effect, and they would have been carried out.  ECF No. 128-1 (Holmes CI medical records); 128-2 (Perez Declaration).  It is undisputed that Plaintiff was transferred to Tomoka CI very soon thereafter in July 2014, and sought no further treatment at Holmes CI.

Although Plaintiff does not expressly state that he is abandoning his claims against Dr. Perez, nowhere in his opposition to Defendants' motion does he argue that she is not entitled to summary judgment on the basis of this evidence.  Plaintiff points to no other evidence in the record that supports a conclusion that Dr. Perez was deliberately indifferent to his serious medical condition.  Plaintiff's deliberate-indifference argument focuses exclusively on Corizon and Dr. Calderon.  *See* ECF No. 136.  On

this record, the Court concludes that there is no genuine issue of material fact as to Dr. Perez's liability under § 1983, and that she is therefore entitled to summary judgment as a matter of law.

## C. *Deliberate Indifference Claim Against Dr. Calderon*

Defendants' summary judgment evidence with respect to Dr. Calderon reflects the following.  Plaintiff continued to receive medication prescribed by Dr. Perez after transferring to Tomoka CI.  On January 20, 2015, Plaintiff submitted a sick-call request in which he stated "I think that I have an ulcer. I've been having stomach pains, constant diarrhea, and sometimes blood in my stool."  ECF No. 128-1 at 11.  Plaintiff further stated that his symptoms began "[b]ack at my last camp about ten or eleven months ago.  Recently it has just gotten worse."  *Id.*  On January 22, 2015, Plaintiff's complaints of stomach pain and diarrhea were documented on a "chronological record of health care" form.  *Id.* at 12.  Plaintiff was noted to have bowel sounds in all quadrants, with no distention or tenderness; pain was present in the right upper quadrant to right lower quadrant. The treatment plan was for referral to the M.D.  *Id.*

Plaintiff was examined by Dr. Calderon on January 29, 2015.  Dr. Calderon's notes are difficult to read and there is no testimony from him interpreting them, but they reflect that Plaintiff was evaluated for "irritable

bowel". Plaintiff told Dr. Calderon that he was experiencing "abdominal discomfort since two months ago", and his subjective symptoms included diarrhea, blood in his stool, and pain that worsened after eating. Dr. Calderon assessed Plaintiff with GERD and noted "r/o internal hemorrhoids". Dr. Calderon ordered an x-ray, medications, lab work and had fecal blood cards given to Plaintiff. X-ray results revealed no obstruction. *Id.* at 13-14. The record includes the report of Plaintiff's blood work. *Id.* at 16-17.

On March 9, 2015, Plaintiff submitted an Inmate Request asking when he "would be on the callout again for some test on my stomach". He stated "I am still suffering the same problems as before and still have no idea why I'm having pains and periodically passing blood. Could you please check my records and see if I have any callouts in the near future?" *Id.* at 18. The response from a medical clerk states that "your lab work was reviewed by the MD who made no note that he needed to see you. If you are still having issues you may return to sick call to be evaluated." *Id.* Plaintiff did not see Dr. Calderon again until June 2016 when his condition had worsened considerably and he was referred out to a hospital and diagnosed with stage IV metastatic colon cancer. *Id.*

In support of summary judgment, Defendants submit a declaration by their expert, Arthur M. Fournier, M.D. ECF No. 128-3. Dr. Fournier is an

internal medicine physician.  Dr. Fournier states that based on his review of

Plaintiff's records, Plaintiff was in his mid-30's and from 2014 until May 2016

had several episodes of blood in his stool, "with no other symptoms".

According to Dr. Fournier, Plaintiff had no family history of cancer and no risk

factors for colon cancer.  Curiously, Dr. Fournier states that the "last episode

of this symptom was in early 2015" more than a year before Plaintiff's cancer

diagnosis, and in "none of these presentations did he complain of abdominal

pain or weight loss.  It is beyond unlikely that [Plaintiff] had colon cancer at

that time."  *Id.* Dr. Fournier recounts that in June 2016 Plaintiff complained of

abdominal pain, weight loss, and fever, and that following his transfer,

diagnosis, and treatment with chemotherapy his condition improved.  In

2018, Plaintiff experienced a recurrence of metastases in the left lobe of his

liver.  The metastases were resected at UF/Shands, where Plaintiff

continues to be followed by surgery and oncology.  *Id.*

Dr. Fournier opines that Plaintiff's "episodic rectal bleeding from 2014

to May 2016 were most likely caused by benign conditions, such as

hemorrhoids or fissures.  In the absence of other symptoms, in a patient in

his mid-30's with no risk factors for colon cancer, a colonoscopy was not

indicated.  This patient had neither symptoms nor history."  *Id.*  Dr. Fournier

states that the care rendered to Plaintiff was consistent with what other

reasonable physicians would have provided, and that based on his review of the records Plaintiff received "excellent" care. *Id.*

In opposition to summary judgment, Plaintiff submitted Dr. Beckham's declaration. ECF No. 135-1. Dr. Beckham is board-certified in general surgery as well as colon and rectal surgery. Dr. Beckham reviewed Plaintiff's DOC medical records of his healthcare from January 20, 2012 through June 2016. Dr. Beckham observes that in January 2012 Plaintiff's lab work reflected normal levels of hemoglobin (14.4g/dl) and a normal hematocrit (48.6%). Dr. Beckham summarizes Plaintiff's medical treatment at Holmes CI. Dr. Beckham then discusses Plaintiff's Tomoka CI records beginning with his January 2015 sick-call request, "which describes having stomach pains, constant diarrhea and sometimes blood in his stool that started at his last prison 10-11 months prior and has recently gotten worse." Dr. Beckham observed that during his evaluation by the nurse, Plaintiff complained of stomach pains and diarrhea. When seen by Dr. Calderon, Plaintiff again complained of abdominal discomfort for two months, diarrhea, blood in his stool, and pain in his upper stomach, with worsening pain after eating. Dr. Beckham notes that the labs initialed by Dr. Calderon on February 16, 2015, reflect a hemoglobin level of 9.5 g/dl and a hematocrit of 33.6%. Dr. Beckham observes that in March 2015, Plaintiff continued to

experience symptoms of pain and passing blood, as reflected on his Inmate Request form. *Id.* Plaintiff subsequently was diagnosed with metastatic colon cancer to his liver in June 2016. *Id.*

Dr. Beckham opines that Dr. Calderon "substantially deviated from the standard of care" by failing to order further testing or referrals based on Plaintiff's symptoms and laboratory results from January 29, 2015. Dr. Beckham states: "The patient presented with abdominal pain and a change in his bowel habits and bleeding with his bowels over a period of several months. He was also found to be significantly anemic compared to his prior labs from 2012. No further workup was ordered to evaluate his anemia or complaints despite the fact that he returned 2 months later in March complaining of persistent symptoms." *Id.*

Dr. Beckham points to the practice guidelines of the American Society of Gastroenterology, which he says provide:

> We recommend that adults age <50 years with colorectal bleeding symptoms (hematochezia, unexplained iron deficiency anemia, melena with a negative upper endoscopy) undergo colonoscopy or an evaluation sufficient to determine a bleeding cause, initiate treatment, and complete follow-up to determine resolution of bleeding. . . . Patients under age 50 with bleeding symptoms consistent with a colorectal source should be aggressively evaluated and treated.

*Id.* at 5.

According to Dr. Beckham, any of Plaintiff's symptoms "including multiple presentations for abdominal pain, a change in bowel habits with diarrhea, or bleeding or significant anemia could have at least warranted a referral for further workup . . . . [t]he combination of all of the above should have definitely been referred for further evaluation by a specialist for consideration of colonoscopy or CT scan."  In Dr. Beckham's opinion, a "negative fecal occult blood test is not a very good test to rule out colon cancer[.]"  He observes that while colon cancer can frequently be asymptomatic, when it presents with symptoms the most common symptoms include:  A change in bowel habits, including diarrhea, that lasts for more than a few days; rectal bleeding with bright red blood; blood in the stool; cramping or abdominal pain; fatigue; and weight loss.  *Id.* at 6.

Dr. Beckham reviewed Dr. Fournier's opinion, in which Dr. Fournier claimed that Plaintiff had episodes of blood in his stool "with no other symptoms" and no complaints of "abdominal pain or weight loss".  Dr. Beckham points out that Plaintiff did complain of diarrhea and stomach pains in May 2014 and again in January 2015.  Dr. Beckham takes issue with Dr. Fournier's assessment that Plaintiff's symptoms were most likely caused by benign conditions, stating that "[b]enign anorectal conditions such as hemorrhoids or fissures do not cause abdominal pain or a change in bowel

habits and rarely cause anemia unless the bleeding is substantial, and are not symptomatic of GERD." *Id.* at 7.

Dr. Beckham concludes that "[i]t is my opinion that Dr. Calderon was grossly negligent in that he did not provide such care as reasonably prudent healthcare providers practicing in the same field would have provided under similar circumstances in caring for" Plaintiff. Dr. Beckham opines that making the diagnosis of colon cancer in early 2015 "could have altered [Plaintiff's] prognosis significantly." *Id.* at 7-8.

Defendants do not dispute that Plaintiff's condition when Dr. Calderon treated him was an objectively serious one. The issue then becomes whether there is a genuine dispute of material fact regarding the subjective component of Plaintiff's deliberate-indifference claim. In this case, the expert opinions offered by the parties are wholly at odds as to whether Dr. Calderon's treatment of Plaintiff evinces deliberate indifference in the form of a "grossly negligent" failure to pursue further diagnosis or treatment in January and February 2015. On this point, it is striking that Dr. Fournier appears to have overlooked or disregarded some of Plaintiff's significant symptoms that are documented in the record. Dr. Fournier opines that a colonoscopy was not indicated for Plaintiff due to rectal bleeding "*in the absence of other symptoms*" and that Plaintiff had "*neither symptoms nor*

*history*", but that is plainly not the case.  ECF No. 128-3 at 2-3 (emphasis added).  Plaintiff's symptoms included a change in bowel habits (diarrhea), blood in his stool, and abdominal pain, which were reported to Dr. Calderon and which were documented in his DOC records from his treatment at Holmes CI in May 2014.  In Dr. Beckham's opinion, those symptoms coupled with the changes in Plaintiff's bloodwork indicating anemia (which Dr. Fournier did not address) necessitated further evaluation and the failure to do so amounts to gross negligence.

A reasonable jury could conclude from this evidence, viewed in the light most favorable to Plaintiff, that Dr. Calderon "recklessly disregard[ed] a substantial risk of serious harm to the inmate." *See Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996). A jury could reasonably conclude that in January 2015 Plaintiff's need for further evaluation was apparent and that Dr. Calderon's response, which arguably delayed the diagnosis of Plaintiff's cancer, was "grossly inadequate" or was "so cursory as to amount to no treatment at all." *See McElligott*, 182 F.3d at 1255–57. In other words, this case is not about a simple difference in views on appropriate treatment, which is insufficient to show deliberate indifference. *See Harris*, 941 F.2d at 1505.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants' motion to strike Plaintiff's expert report, ECF No. 126, is **DENIED.**

It is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment should be **GRANTED** with respect to Plaintiff's claims against Corizon, Dr. Perez, and M. Remirez, and that the motion should be **DENIED** with respect to Plaintiff's remaining deliberate-indifference claim against Dr. Calderon.

**IN CHAMBERS** this 22nd day of January 2021.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**